IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:23-cv-380

| | |
|---|---|
| MARY DORE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) **COMPLAINT** |
| | ) |
| NOVANT MEDICAL GROUP INC. & | ) **JURY TRIAL DEMANDED** |
| NOVANT HEALTH, INC. | ) |
| | ) |
| Defendants. | ) |

## I. INTRODUCTION

1. Mary Dore ("Plaintiff" or "Ms. Dore") files this action against Novant Medical Group Inc. and Novant Health, Inc. (collectively, "Novant" or "Defendant") for violations of the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*) (Count I) and Wrongful Discharge in Violation of Public Policy (Count II).

## II. PARTIES, JURISDICTION, AND VENUE

2. Novant Medical Group Inc. is a corporation with its mailing address at 108 Providence Road, Suite 3, Charlotte, North Carolina 28207, and its registered agent at Corporation Service Company, 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina 27608.

3. Novant Health, Inc. is a corporation with its principal office located at 2085 Frontis Plaza Boulevard, Winston Salem, North Carolina 27103, and its registered agent at Corporation Service Company, 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina

1

27608.

4. Plaintiff worked for Novant at 10514 Park Road, Charlotte, North Carolina 28210, which is in Mecklenburg County, North Carolina.

5. Venue is proper in the District of North Carolina, Western Division, because: Novant has a substantial presence in Charlotte, North Carolina and conducts a great deal of business in Charlotte. At all relevant times, Plaintiff worked out of the 10514 Park Road, Charlotte, North Carolina 28210 location and the facts and circumstances of the case arise in Charlotte, North Carolina. But for Defendant's illegal conduct, Plaintiff would have continued working in Charlotte, North Carolina.

### III. FACTUAL STATEMENT

6. Ms. Dore began working for Novant in or around January 2015.

7. Ms. Dore was an excellent employee throughout her employment. She delivered for Novant despite her disability. Novant never issued Ms. Dore any sort of discipline until after her necessary surgeries related to her disabilities. Novant was satisfied with her performance before illicit bias reared its head.

8. In or around December 2019, Ms. Dore developed Ischemic Colitis, which is a life-threatening condition and disability. Her condition required her to undergo several surgeries throughout 2019 and 2020. Those surgeries and her condition required Ms. Dore to take time off of work, which amounted to reasonable accommodations.

9. In June 2020, after her fourth surgery and at the behest of her surgeon, Ms. Dore asked Novant for a reasonable accommodation to work from home. Novant denied the request. Ms. Dore still required a leave from work, which also qualified as a reasonable

accommodation under the ADA.

10. On or around July 30, 2020, Ms. Dore returned to work from her reasonable accommodation. Upon her return, Dr. Richard Rachima and Trish Todd began a campaign of retaliation against her. This included an incident in which Todd criticized Ms. Dore for her colostomy bag, which is a medical necessity for her disability. Dr. Rachima stopped having face-to-face meetings with Ms. Dore, as well.

11. Shortly after her return, Novant placed Ms. Dore on an unwarranted and discriminatory performance improvement plan ("PIP"). In response, Ms. Dore engaged in protected activity and filed a discrimination complaint with human resources in or around August 2020.

12. After the complaint, Ms. Dore continued to work successfully in her role and moved past the PIP, even though it was clearly retaliatory and not valid. Dr. Rachima continued to harass Ms. Dore in her chart reviews and continued to refuse face-to-face communication or discuss the chart reviews with her.

13. On or around December 10, 2020, Ms. Dore underwent another ischemic colitis surgery, which led to serious complications and another surgery on or around December 30, 2020. The surgeries led to Ms. Dore staying in the hospital overnight and required her to take approximately two weeks off of work. This leave of absence was protected by the ADA as a reasonable accommodation. Ms. Dore, fearing more retaliation from Novant, further engaged in protected activity by going through the interactive process with Novant regarding her return to work and otherwise requesting and receiving an accommodation.

14. On or around January 11, 2021, Ms. Dore received word from Dr. Rachima and Todd

that she had received two alleged complaints from patients she saw on or around December 23, 2020. These complaints were allegedly filed weeks later at the encouragement of Dr. Rachima. They were not serious complaints and, moreover, similar complaints made against others were routinely not only not termination-worthy, but not even discipline-worthy. Novant had Ms. Dore in its sights because of her disability and protected activity.

15. On January 22, 2021, Dr. Rachima and Todd terminated Ms. Dore's employment without human resources present. They cited failure to improve on the areas listed on the discriminatory and retaliatory PIP from July 2020. This was obviously a pretext for illegal discrimination and retaliation.

16. Nonetheless, it seemed like either the decision would be reversed, Ms. Dore would be transferred, or Novant would otherwise re-hire her. Soon after the termination decision, Dr. Liguere called Ms. Dore to discuss what had happened. He was stunned. He said that he'd look into transferring her instead.

17. In the meantime, Ms. Dore appealed the termination decision. She met with Novant's third-party investigator to discuss what happened. Ms. Dore explained to her that the decision was both discriminatory and retaliatory for engaging in protected activity. The interview was going fine, but when Ms. Dore informed her that she had hired counsel, it was almost as if you could hear a record screech. She was clearly upset Ms. Dore had hired counsel, and she let Ms. Dore know that "she shouldn't have done that." She said it changed everything, and —because Ms. Dore had a lawyer—she didn't even know why the interview was happening.

18. Ms. Dore also applied for many open positions posted by Novant and Novant consistently and immediately rejected her for those positions. They would not have done so if

Ms. Dore had not complained about illegal discrimination, had a disability, requested and received accommodations, or hired counsel. Novant didn't give Ms. Dore a chance.

19. Even after all of this, Ms. Dore still wanted to return. She had been with Novant for more than half a decade and generally enjoyed working there. Ms. Dore loved her patients and coworkers and needed the income. However, Novant upheld Ms. Dore's illegal termination and refused to rehire or transfer her.

20. On June 25, 2021, Ms. Dore filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On March 31, 2023, the EEOC issued Ms. Dore a right to sue letter.

## IV. LEGAL CLAIMS

### Count I

*(Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.)*

21. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

22. Defendant regularly employed more than fifteen employees at all relevant times.

23. Plaintiff was disabled in that she had physical impairments that substantially limited one or more bodily functions. Plaintiff's condition substantially limited the following major bodily functions related to digestive, bowel, circulatory and other functions.

24. Plaintiff was disabled in that she had physical impairments that substantially limited one or more major life activity. Plaintiff's condition substantially limited the following major life activities: walking, moving, bending, lifting, working, and others.

25. Plaintiff's disability affected her circulatory, digestive, and other systems.

26. Plaintiff has a record of such impairments or is otherwise regarded as having such impairments.

27. Plaintiff suffered an adverse employment action when Defendant terminated her employment on the basis of her disabilities and/or in retaliation for receiving or requesting reasonable accommodations (leave of absence and working from home) or in retaliation for complaining about discrimination.

28. Defendant violated the ADA by terminating Plaintiff on the basis of her real or perceived disabilities and/or in relation for receiving and requesting a reasonable accommodation or in retaliation for complaining about discrimination.

29. Moreover, Defendant violated the ADA by failing to hire or re-hire Plaintiff on the basis of her real or perceived disabilities and/or in relation for receiving and requesting a reasonable accommodation or in retaliation for complaining about discrimination.

30. Defendant also violated the ADA by failing to accommodate Plaintiff's disability.

31. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, emotional distress, embarrassment, humiliation, physical pain and suffering, and her peace of mind has been disturbed.

32. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## Count II

### *(Wrongful Discharge in Violation of Public Policy)*

33. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

34. Plaintiff was an at-will employee of Defendants.

35. Defendants employed at least fifteen (15) employees at all relevant times.

36. The public policy of North Carolina, codified in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2(a), seeks to protect and safeguard the opportunity and right of all individuals to "seek, obtain, and hold employment without discrimination" on the basis of disability or "handicap." Defendant violated the public policy of North Carolina by terminating Plaintiff on the basis of her disability (or "handicap"). Defendant further violated the public policy of North Carolina by terminating Plaintiff because Defendants regarded Plaintiff as having a physical or mental impairment which substantially limits one or more major life activities.

37. Plaintiff qualified as an individual with a disability in that she was actually disabled/handicapped and was perceived as such.

38. Defendants violated North Carolina public policy by terminating Plaintiff because of her actual or perceived disability and/or handicap.

39. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, diminution in her earning capacity, severe emotional distress, damage to her reputation, anxiety, depression, embarrassment, humiliation, and her peace of mind has been disturbed.

40. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## **JURY TRIAL DEMANDED**

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment against Defendant and order Defendant to pay Plaintiff damages for all harms and losses;

2. Award Plaintiff punitive damages;

3. Award Plaintiff punitive damages pursuant to N.C. GEN. STAT. § 1D-1 *et seq.*;

4. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action.

5. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

6. Grant Plaintiff a trial of this matter by a jury.

This the 27 day of June, 2023.

>*/s/ Sean F. Herrmann*
> Sean F. Herrmann
> North Carolina Bar No. 44453
> Kevin P. Murphy
> North Carolina Bar No. 41467
> Herrmann & Murphy, PLLC
> 400 Clarice Ave, Ste 100
> Charlotte, North Carolina 28204
> Phone: 704-940-6399
> Fax: 704-940-6407
> Email: kevin@herrmannmurphy.com
> Email: sean@herrmannmurphy.com
>
> *Attorneys for Plaintiff*